1
2
3
4
5
6

SEYFARTH SHAW LLP
Laura Wilson Shelby (SBN 151870)
lshelby@seyfarth.com
Leo Q. Li (SBN 293539)
lli@seyfarth.com
Jennifer R. Nunez (SBN 291422)
jnunez@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

7
8

Attorneys for Defendants
ALDI INC. and AI CALIFORNIA LLC

9

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

13
14

JEREE GANT, individually, and on behalf
of other members of the general public
similarly situated,

15

Plaintiff,

16

v.

17
18

ALDI, INC., a California corporation; AI
CALIFORNIA LLC, an unknown business
entity; and DOES 1 through 100, inclusive,

19

Defendants.

20
21
22
23
24
25
26
27
28

Case No. 2:19-cv-3109

**DEFENDANTS' NOTICE OF
REMOVAL OF CIVIL ACTION TO
THE UNITED STATES DISTRICT
COURT PURSUANT TO 28 U.S.C.
§§ 1332, 1441, 1446, 1453**

[Los Angeles County Superior Court;
Case No. 19STCV04857]

Complaint Filed:      February 14, 2019

55870000v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF JEREE GANT AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants ALDI Inc. ("ALDI") and AI California LLC ("AI") (collectively, "Defendants") file this Notice of Removal, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of Los Angeles, to the United States District Court for the Central District of California.  This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons:

## I.    BACKGROUND

1.    On February 14, 2019, Plaintiff Jeree Gant ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of Los Angeles, titled "*JERRE GANT, individually, and on behalf of other members of the general public similarly situated; Plaintiff v. ALDI, INC., a California corporation; AI California LLC, an unknown business entity; and DOES 1 through 100, inclusive, Defendants*," Case No. 19STCV04857 ("Complaint").  The Complaint asserts ten causes of action for: (1) Unpaid Overtime, (2) Unpaid Meal Period Premiums, (3) Unpaid Rest Period Premiums, (4) Unpaid Minimum Wages, (5) Final Wages Not Timely Paid, (6) Wages Not Timely Paid During Employment, (7) Non-Compliant Wage Statements, (8) Failure To Keep Requisite Payroll Records, (9) Unreimbursed Business Expenses, and (10) Violations of California Business & Professions Code §§ 17200, *et seq.* ("Unfair Competition Law" or "UCL").

2.    On March 26, 2019, ALDI was served via personal service at its corporate headquarters in Batavia, Illinois, a copy of the Civil Case Cover Sheet, Summons, Complaint, Notice of Case Assignment, Voluntary Efficient Litigation Stipulations, Stipulation—Early Organizational Meeting, Stipulation—Discovery Resolution, Informal Discovery Conference, Stipulation and Order—Motions in Limine, and Alternative

Dispute Resolution (ADR) Information Packet.  A true and correct copy of the service packet received by Defendant is attached hereto as **Exhibit A**.

3.      On March 26, 2019, AI's registered agent for service of process in California received, via process server, a copy of the Civil Case Cover Sheet, Summons, Complaint, Notice of Case Assignment, Voluntary Efficient Litigation Stipulations, Stipulation—Early Organizational Meeting, Stipulation—Discovery Resolution, Informal Discovery Conference, Stipulation and Order—Motions in Limine, and Alternative Dispute Resolution (ADR) Information Packet.  A true and correct copy of the service packet received by Defendant is attached hereto as **Exhibit B**.

4.      On April 19, 2019, Defendants jointly filed the Answer to Plaintiff's Complaint in Los Angeles Superior Court.  A true and correct copy of Defendants' Answer to Plaintiff's Complaint is attached hereto as **Exhibit C**.

5.      Defendants have not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A through C in this action prior to the Notice of Removal.

## II.      TIMELINESS OF REMOVAL

6.      Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal … shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant…."  28 U.S.C. §1446(b)(1).

7.      Defendants' Notice of Removal is timely because it is filed on April 22, 2019, which is within 30 days of service of the Summons and Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint….").

NOTICE OF REMOVAL

### III.   REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

8.   Under the CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).

#### A.   The Class Action Includes At Least 1,723 Putative Class Members

9.   A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

10.   Here, Plaintiff defines the "proposed class" to include "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Complaint, ¶14.) Based on the filing date of the Complaint on February 14, 2019, the proposed class period covers the time period of February 14, 2015, to the present.

11.   However, ALDI did not have any non-exempt store employees in California prior to August 7, 2015. (Declaration of ALDI ("ALDI Decl."), ¶10.) Accordingly, the proposed class period only covers the time period of August 7, 2015, to the present.

12.   **Based on the proposed class definition, there are at least 1,723 current and former non-exempt employees in the proposed class as of April 1, 2019.** (ALDI Decl., ¶11.) Thus, there is no question that the size of the proposed class far exceeds the minimum threshold of 100 members under CAFA.

#### B.   Plaintiff And Defendants Are Minimally Diverse

13.   Under 28 U.S.C. § 1332(d)(2)(A), CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction—that is, at least one purported class member must be a citizen of a state different than any named defendant. 28 U.S.C.

3

§ 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant").

14.     A party's citizenship is determined at the time the lawsuit was filed.  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

15.     In this case, at the time of the lawsuit was filed, Plaintiff is a citizen of the State of California, and both Defendants are citizens of a state other than California—ALDI is a citizen of Illinois, and AI is a citizen of both Delaware and Illinois.

### 1.     Plaintiff Is A Citizen of California

16.     For diversity purposes, a natural person's state citizenship is determined by that person's domicile—*i.e.*, "[one's] permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

17.     In this case, Plaintiff alleges that she "is an individual residing in the State of California, County of Los Angeles."  (Complaint, ¶5.)  Plaintiff also alleges that "Defendants employed Plaintiff … within the State of California, including the County of Los Angeles."  (*Id.* at ¶18.)  Plaintiff further alleges that she was "an hourly-paid, non-exempt employee, from approximately October 2017 to approximately May 2018, in the State of California, County of Los Angeles."  (*Id.* at ¶19.)

18.     Additionally, Plaintiff provided ALDI with her home address during the course of her employment for purposes of her personnel file, payroll checks, and tax withholdings.  (ALDI Decl., ¶4.)  ALDI's review of Plaintiff's personnel file from her employment with ALDI reveals that Plaintiff resides in Santa Fe Springs, California.  (*Id.*)

55870000v.1

19.     Plaintiff's intent to remain domiciled in California also is evident from the fact that she brought this lawsuit against Defendants in Los Angeles Superior Court. Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2.     ALDI Is Not A Citizen Of California

20.     ALDI has been a citizen of Illinois within the meaning of 28 U.S.C. § 1332(c)(1).

21.     For diversity purposes, the citizenship of a corporation is "every state and foreign state by which it has been incorporated and of the state or foreign state where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).

22.     The "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis, also known as the corporation's "nerve center."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010) (rejecting all prior tests in favor of "nerve center" test). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis.  *Id.* at 92-93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc., v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

23.     In this case, ALDI is a corporation that at all relevant times during this litigation was incorporated and existing under the laws of the State of Illinois.  (ALDI Decl., ¶5.)  ALDI's headquarters is located in Batavia, Illinois, where its high level officers direct, control, and coordinate its activities.  (*Id.* at ¶6.)  Additionally, the majority of ALDI's executive and administrative functions are performed in or directed from the Batavia, Illinois, offices, including corporate finance, accounting, purchasing, marketing, and information systems.  (*Id.*)

5

24.     Given that ALDI's place of incorporation is in the State of Illinois and its principal place of business is in the State of Illinois, ALDI is a citizen of Illinois.  Thus, there is complete diversity between Plaintiff (California) and ALDI (Illinois).

### 3.     AI Is Not A Citizen Of California

25.     AI has been a citizen of Delaware and Illinois within the meaning of 28 U.S.C. § 1332(c)(1).

26.     AI is now, and ever since the commencement of this action has been a limited liability company, organized under the laws of the State of Delaware with its principal place of business in Batavia, Illinois.  (ALDI Decl., ¶8.)  AI's principal place of business is in Illinois because it is where its headquarters is located, where its high level officers direct, control, and coordinate its activities.  (*Id.* at ¶9.)  Additionally, the majority of AI's executive and administrative functions are performed in or directed from the Batavia, Illinois, offices, including corporate finance, accounting, purchasing, marketing, and information systems.  (*Id.*)

27.     "For purposes of diversity jurisdiction, a limited liability company 'is a citizen of every state of which its owners/members are citizens.'"  *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (citing *Johnson v. Columbia Properties Anchorage, LP*, 437 F3d 894, 899 (9th Cir. 2006)).

28.     In this case, AI's sole member has been ALDI, and ALDI owns 100% of AI.  (*Id.* at ¶7.)  Given that ALDI is a citizen of Delaware and Illinois, as discussed above, AI also is a citizen of Delaware and Illinois.  Thus, there is complete diversity between Plaintiff (California) and AI (Delaware and Illinois).

### 4.     Doe Defendants' Citizenship Should Be Disregarded

29.     The other defendants named in the Complaint are merely fictitious parties identified as "DOES 1 through 100" whose citizenship shall be disregarded for purposes of this removal.  28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is

6

disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

### C.  The Amount In Controversy Is More Than $19 Million, Which Exceeds The $5 Million Statutory Threshold Under CAFA

30.    Under 28 U.S.C. § 1332(d)(2), "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs[.]"  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).

31.    In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40.

32.    The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court **should be resolved in favor of federal jurisdiction**.  *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case. . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

33.    Where, as here, a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the**

**evidence** that the amount in controversy exceeds the statutory minimum.  *See Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 553-54 ("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the jurisdictional threshold"); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) (holding that "the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *accord Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy . . . we therefore apply the preponderance of the evidence burden of proof to the removing defendant"); *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that under the "preponderance of the evidence" standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount").

34.    To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.

35.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

36.    For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff

will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at \*3 (E.D. Cal. May 1, 2007).

37.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that a plaintiff "may not 'sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court'").

38.     If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at \*4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at \*3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, at \*4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in

9

calculating the amount in controversy when the complaint does not allege a more precise calculation.").

39.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d, 1025 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate

10

for waiting-time penalties since the complaint did not limit the number or frequency of violations).

40.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations **exceeds $19 million**.  All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

### 1.   The First Cause Of Action For Unpaid Overtime: The Amount In Controversy Exceeds $2,913,599.16 Based On Only One Hour Of Unpaid Overtime Per Employee Per Week

41.     Plaintiff alleges that "Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week."  (Complaint, ¶53.)  Plaintiff also alleges that "Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members."  (*Id.* at ¶54.)  In the Prayer For Relief, Plaintiff also alleges that "Defendants violated California Business and Professions Code sections 17200, *et seq.* by failing to provide Plaintiff and the other class members all overtime compensation due to them" and therefore seeks "restitution of unpaid wages."  (Prayer For Relief, ¶¶53-54.)

42.     California Labor Code section 510(a) states that "any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

43.     The statute of limitations for recovery for overtime pay under California Labor Code section 510 pay is three years.  Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation").  Accordingly, the

proposed class period for the first cause of action begins on August 7, 2015—ALDI did not have any non-exempt store employees in California prior to this date.

44.     In this case, the average hourly rate of the putative class members is $15.48. (ALDI Decl., ¶12.)  The average overtime rate would be no less than $23.22 ($15.48 x 1.5).

45.     During the proposed class period of August 7, 2015 and April 1, 2019, the putative class members worked approximately 125,478 weeks.  (ALDI Decl., ¶13.) Based on the allegations of the Complaint, if each putative class member is entitled to one hour of unpaid overtime per week, the amount in controversy on this claim would equal no less than **$2,913,599.16** ($23.22 x 125,478 weeks).

### 2.     The Second Cause Of Action For Unpaid Meal Period Premiums: The Amount In Controversy Exceeds $1,942,399.44 Based On Only One Hour Of Premium Pay Per Employee Per Week

46.     Plaintiff alleges that "Plaintiff and the other class member who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period."  (Complaint, ¶62.)  Plaintiff also alleges that "Plaintiff and the other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (3) minutes and/or rest period."  (*Id.* at ¶63.)

47.     Plaintiff further alleges that "Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate [them] the full meal period premium for work performed during meal periods."  (Complaint, ¶64.)  Plaintiff seeks to "recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  (*Id.* at ¶67.)  Plaintiff also seeks "restitution" for

"failing to provide all meal and rest periods to Plaintiffs and the other class members." (Prayer For Relief, ¶53.)

48.     California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes…."  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes…."  California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

49.     The statute of limitations for recovery for meal period premium pay under California Labor Code section 226.7 is three years.  *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code sections 17200, *et seq*.  *See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation").  Accordingly, the proposed class period for the second cause of action begins on August 7, 2015—ALDI did not have any non-exempt store employees in California prior to this date.

50.     Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per week for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$1,942,399.44** ($15.48 x 125,478 weeks).

### 3. The Third Cause Of Action For Unpaid Rest Period Premiums: The Amount In Controversy Exceeds $1,942,399.44 Based On Only One Hour Of Premium Pay Per Employee Per Week

51.     Plaintiff alleges that "Defendants required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked." (Complaint, ¶72.) Plaintiff further alleges that "Defendants intentionally and willfully required Plaintiff and the other class members to work during rest periods and failed to pay [them] the full rest period premium for work performed during rest periods." (*Id.* at ¶73.)

52.     Plaintiff seeks to "recover from Defendants one additional hour of pay at the employee's regular hourly rate of compensation for each work day that the rest period was not provided." (Complaint, ¶76.) Plaintiff also seeks "restitution" for "failing to provide all meal and rest periods to Plaintiffs and the other class members." (Prayer For Relief, ¶53.)

53.     Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which … shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012). California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon*, 2010 WL 1753194 at *4.

54.     The statute of limitations for recovery for rest period premium pay under California Labor Code section 226.7 is three years. *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code sections 17200, *et seq*. *See Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the third cause of action begins

14

on August 7, 2015—ALDI did not have any non-exempt store employees in California prior to this date.

55.    Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per week for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$1,942,399.44** ($15.48 x 125,478 weeks).

### 4.    The Fourth Cause Of Action For Unpaid Minimum Wages: The Amount In Controversy Exceeds $2,664,680.76 Based On Only One Hour Of Unpaid Minimum Wage Per Employee Per Week

56.    Plaintiff alleges that "Defendants failed to pay minimum wage to Plaintiff and the other class members as required, pursuant to California Labor Code section 1194, 1197, and 1197.1." (Complaint, ¶79.)  In addition to seeking unpaid minimum wages, Plaintiff also seeks to "recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." (*Id.* at 82.)  Plaintiff further seeks "restitution" for "failing to pay at least minimum wages to plaintiff and the other class members." (Prayer For Relief, ¶53.)

57.    California Labor Code § 1194(a) states it is unlawful to pay an employee "less than the legal minimum wage or legal overtime compensation."  California Labor Code § 1197 states that "payment of less than the minimum wage . . . is unlawful." California Labor Code § 1197.1 allows an employee to recover a civil penalty, restitution of wages and liquidated damages if an employee is paid less than the minimum wage for all hours worked.

58.    The statute of limitations for recovery for minimum wages under California Labor Code section 1194 pay is three years.  Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation").  However, "[c]laims for liquidated damages under § 1194.2 … are therefore subject to the one-year statute of limitations." *Silva v. AvalonBay*

15

*Communities, Inc.*, 2015 WL 11422302, at *7 (C.D. Cal. Oct. 8, 2015).  Accordingly, the proposed class period for the fourth cause of action begins on August 7, 2015 for the recovery of unpaid minimum wages, and begins on February 14, 2018 for the recovery of liquidated damages.

59.    In this case, there are approximately 125,478 weeks worked during the four-year limitations period and approximately 46,659 weeks worked during the one-year limitations period.  (ALDI Decl., ¶¶13-14.)

60.    Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of minimum wage per week (or 12 minutes of each workday), the amount in controversy on this claim would equal approximately **$2,664,680.76**, including $1,942,399.44 ($15.48 x 125,478 weeks) for alleged unpaid minimum wages and $722,281.32 ($15.48 x 46,659 weeks) for liquidated damages.

### 5.    The Fifth Cause Of Action For Final Wages Not Timely Paid: The Amount In Controversy Exceeds $3,328,819.20

61.    Plaintiff alleges that "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendant their wages, earned and unpaid, within 72 hours of their leaving Defendants' employ." (Complaint, ¶85.)  Plaintiff also alleges that "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) days maximum."  (*Id.* at ¶88.)

62.    Under California Labor Code section 203(a), an employee may recover "the [daily] wages . . . as a penalty from the due date thereof at the same rate" but not "for more than 30 days."

63.    The statute of limitations period for California Labor Code section 203 penalties extends back only three years from the date of filing of the complaint, or August 7, 2015.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) (holding that "if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have … three years to sue for the unpaid final wages giving

rise to the penalty").  Accordingly, the proposed class period for a claim under California Labor Code section 203 begins on February 14, 2016, which is three years prior to the date of the filing of the Complaint.

64.   During the applicable statute of limitations period between February 14, 2016, and April 1, 2019, there are at least 872 proposed class members who are former non-exempt employees.  (ALDI Decl., ¶15.)

65.   Based on the average hourly rate of $15.48, the amount in controversy on this claim would equal no less than **$3,328,819.20** ($15.48 x 8 hours x 30 days x 896 employees).

### 6.   The Sixth Cause Of Action For Wages Not Timely Paid During Employment: The Amount In Controversy Is None Because No Private Right Of Action Exists

66.   Plaintiff alleges that "Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any time period permissible under California Labor Code section 204."  (Complaint, ¶93.)

67.   However, there is no private right of action for violations under California Labor Code section 204.  *Lopez v. Aerotek, Inc.*, 2015 WL 4504691, at *2 (C.D. Cal. July 23, 2015) ("Courts have previously held that nothing in section 204 or 210 clearly indicates that a private right of action exists.").  Thus, the amount in controversy this claim would be $0.

### 7.   The Seventh Cause Of Action For Non-Compliant Wage Statements: The Amount In Controversy Exceeds $2,317,950.00

68.   Plaintiff alleges that "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements," including, but are not limited to "the failure to include the total number of hours worked by Plaintiff and the other class members."  (Complaint, ¶97.)

69.   California Labor Code section 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.

17

55870000v.1

70.     The statute of limitations for recovery of penalties under California Labor Code section 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Accordingly, the statutory period for a claim under California Labor Code section 226 begins on February 14, 2018, which is one year prior to the date of the filing of the Complaint.

71.     During the statute of limitations period for the wage statement claim, from February 14, 2018, to April 1, 2019, there are at least 1,146 putative class members who, according to Plaintiff, failed to receive accurate wage statements.  (ALDI Decl., ¶14.)  The putative class members are paid on a bi-weekly basis.  (*Id.* at ¶12.)

72.     After excluding those pay periods that would not be entitled to a penalty because the statutory $4,000 maximum has been reached, the 1,146 putative class members worked at least 23,752 pay periods that could qualify for a wage statement penalty.  (ALDI Decl., ¶14.)  When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement (up to a maximum of $4,000 for each employee), the amount in controversy on this claim would equal no less than **$2,317,950.00**.  (*Id.*)

### 8.     The Eighth Cause Of Action For Failure To Keep Requisite Payroll Records: The Amount In Controversy Is None Because No Private Right Of Action Exists

73.     Plaintiff alleges that "Defendants have intentionally and willfully failed to keep accurate and complete payroll records showing the hours worked daily and the wages paid, to Plaintiff and the other class members."  (Complaint, ¶104.)  Plaintiff seeks recovery under California Labor Code section 1174(d).  (*Id.* at ¶¶105-106.)

74.     However, there is no private right of action for violations under California Labor Code section 1174(d).  *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 958 (N.D. Cal. 2016) (holding that "California Labor Code section 1174 does not contemplate a private right of action").  Thus, the amount in controversy this claim would be $0.

55870000v.1

**9.     The Ninth Cause Of Action For Unreimbursed Business Expenses: The Amount In Controversy Exceeds $172,300**

75.     Plaintiff alleges "Plaintiff and the other class members incurred necessary business-related expenses and costs that were not fully reimbursed by Defendants." (Complaint, ¶109.)  Plaintiff seeks to "recover from Defendants their business-related expenses and costs incurred during the course and scope of their employment, plus interest accrued…."  (*Id.* at 111.)

76.     An employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."  Cal. Labor Code § 2802(a).

77.     Plaintiff does not specify the type or the amount of business expenses incurred by the putative class members.  So, assuming that each putative class member incurred $100 of unreimbursed business expenses, the amount in controversy on this claim would equal no less than **$172,300** ($100 x 1,723 putative class members).

**10.     The Attorneys' Fees And Costs**

78.     For purposes of determining the amount in controversy, only "interest and costs" are excluded from the calculation.  28 U.S.C. § 1332.  Therefore, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory) ; *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

55870000v.1

79.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.,* 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012 ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA."); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

80.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

81.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding

20

ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).  Even under the conservative benchmark of 25 percent of the total recovery for the applicable claims, attorneys' fees alone would be upward of **$3,820,537.00** in this case which is 25% of the potential recovery of the claims alleged in the Complaint—$2,913,599.16 (unpaid overtime) + $1,942,399.44 (unpaid meal premiums) + $1,942,399.44 (unpaid rest premiums) + $2,664,680.76 (unpaid minimum wages ) + $3,328,819.20 (waiting time penalties) + $2,317,950 (wage statement claim) + $172,300.00 (reimbursement claim).

**11.    The Total Aggregate Amount In Controversy Exceeds $19 Million**

82.    Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class for all asserted claims is approximately **$19,102,685.00**:

| Cause of Action | Amount In Controversy Based On The Allegation Of The Complaint |
|---|---|
| 1. Unpaid Over Time | $2,913,599.16 (one hour of overtime per employee per week) |
| 2. Unpaid Meal Period Premiums | $1,942,399.44 (one hour of premium pay per employee per week) |
| 3. Unpaid Rest Period Premiums | $1,942,399.44 (one hour of premium pay per employee per week) |
| 4. Unpaid Minimum Wages | $2,664,680.76 (one hour per employee per week) |
| 5. Final Wages Not Timely Paid | $3,328,819.20 (based on 896 former employees) |

55870000v.1

| 6. Wages Not Timely Pay During Employment | $0 (no private right of action) |
|---|---|
| 7. Non-Compliant Wage Statements | $2,317,950.00 (based on 23,752 pay periods) |
| 8. Failure to Keep Requisite Payroll Records | $0 (no private right of action) |
| 9. Unreimbursed Business Expenses | $172,300.00 ($100 of reimbursement per employee) |
| 10. Attorneys' Fees and Costs | $3,820,537.00 (based on 25% of the potential recovery) |
| **Total** | **$19,102,685.00** |

83.     Although Defendant denies Plaintiff's allegations that she or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

84.     Because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

85.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

**IV.     VENUE**

86.     Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action originally was brought in Los Angeles County Superior Court of the State of California, which is located within the Central District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  A true and correct copy of this Notice of Removal will

55870000v.1

be promptly served on Plaintiff and filed with the Clerk of the Los Angeles County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

87.    Defendants will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in the County of Los Angeles.  The Notice of Removal is concurrently being served on all parties.

## VI.    PRAYER FOR REMOVAL

88.    WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California.


DATED: April 22, 2019                         Respectfully submitted,

                                              SEYFARTH SHAW LLP


                                              By:    /s/ Jennifer R. Nunez
                                                     Laura Wilson Shelby
                                                     Leo Q. Li
                                                     Jennifer R. Nunez
                                                     Attorneys for Defendants
                                                     ALDI INC. and AI CALIFORNIA LLC

23

55870000v.1